[Civil No. 2345.    Filed October 9, 1925.]

[239 Pac. 789.]

# FORTUNA CONSOLIDATED MINING COMPANY, a Corporation, Appellant, v. P. J. MILLER, Appellee.

1. MINES AND MINERALS—VALIDITY OF RELOCATOR'S CLAIMS HELD NOT AFFECTED BY HIS IMPRESSION THAT HE COULD NOT LOCATE THEM, THOUGH ABANDONED, UNTIL PRIOR CLAIMANT'S TIME FOR DOING ANNUAL WORK HAD EXPIRED.—Validity of mining claims *held* not affected by claimant's impression, when locating them, that he could not do so, though he knew they had been abandoned by prior claimant, until latter's time for doing annual assessment work had expired; it being unnecessary to state theory on which he relocated land, in view of Session Laws of 1907, chapter 22, eliminating requirement of Civil Code of 1901, paragraph 3241, that location notice state whether all or any part of claim is located as abandoned property.

2. MINES AND MINERALS—ABANDONMENT OF CLAIMS BEFORE RELOCATION HELD FOR JURY.—Whether corporate owner of mining claims had abandoned them by failure to do annual assessment work within additional time allowed by Act of Congress, December 31, 1920 (U. S. Comp. Stats. Ann. Supp. 1923, § 4620h), or by its president's declaration that company did not want claims, *held* for jury, on conflicting testimony of relocator on witness-stand and in deposition.

3. EVIDENCE—STATEMENTS OF PRESIDENT OF CORPORATION HELD PROPERLY CONSIDERED ON ISSUE OF ABANDONMENT OF MINING CLAIMS BY IT.—Where testimony of relocator of mining claims as to statements by president of prior claimant, that company did not want property and was going to keep certain other claims only, was admitted, and no error was assigned thereon, they were rightfully considered by jury on issue of abandonment, even if such intention should have been expressed in resolution of stockholders or directors.

4. EVIDENCE—STATEMENTS BY PRESIDENT AS TO COMPANY'S INTENTION TO DISCONTINUE ANNUAL WORK ON MINING CLAIMS MAY BE CONSIDERED ON ISSUE OF ABANDONMENT.—That president of corporation or board of directors cannot dispose of its realty, especially that necessary for transaction of its business, unless authorized by stockholders, does not prevent consideration of statements of

2.   See 18 R. C. L. 1168.

president as to company's intention to discontinue annual assessment work on certain mining claims held by it on issue of abandonment thereof, which is purely a matter of intention.

5. WITNESSES—LETTER HELD ADMISSIBLE TO CONTRADICT TESTIMONY OF MINING COMPANY'S PRESIDENT THAT HE DID NOT ATTEMPT TO MANIPULATE STOCK.—In action to quiet title to mining claims, alleged to have been abandoned by corporation before relocation by plaintiff, who contended that company's officers had no *bona fide* intention to develop mine, but intended merely to promote company in order to sell stock, for which purpose they regarded other claims retained by it as sufficient, letter to plaintiff from defendant's president *held* admissible to contradict his testimony that he had not attempted to manipulate stock.

6. MINES AND MINERALS—ANY FACT OR CIRCUMSTANCE AIDING IN SOLUTION OF QUESTION OF ABANDONMENT OF CLAIMS ADMISSIBLE. Range of inquiry on question of abandonment of mining claims is very wide, and both parties should be allowed to prove any fact or circumstance from which any aid in solution of question can be derived.

See (1) 27 Cyc., p. 599.   (2) 27 Cyc., p. 598.   (3) 22 C. J., p. 388. (4) 27 Cyc., p. 598.   (5) 40 Cyc., p. 2745.   (6) 27 Cyc., p. 612 (Anno.).

APPEAL from a judgment of the Superior Court of the County of Pinal. Stephen H. Abbey, Judge. Affirmed.

Messrs. Barnum & Flanigan, for Appellant.

Messrs. Baughn & Walton, for Appellee.

McALISTER, C. J.—Appellee, P. J. Miller, instituted an action against the Fortuna Consolidated Mining Company to quiet title to five lode mining claims situated in the Pioneer mining district of Pinal county. He was successful in the trial court, and the company appeals.

It appears from the record that on March 6, 1917, appellee and one E. D. Farley located in the Pioneer

6. Abandonment and forfeiture of mining claims, see note in 87 Am. St. Rep. 403. See, also, 18 R. C. L. 1168.

mining district of Pinal county in one contiguous group fourteen mining claims, known as Fortuna No. 3 to Fortuna No. 16, and that on August 15th following, they deeded these, together with two other adjoining claims which they held under bond and lease, Fortuna No. 1 and Fortuna No. 2, to the appellant company. Thereafter the company did the annual assessment work on Fortuna No. 1 and Fortuna No. 2, but for the years 1918 and 1919 it held the other fourteen claims by filing with the county recorder of Pinal county the notices provided for in a resolution of Congress relieving the owners of mining claims from doing this work. In November or December, 1920, appellant did the annual work on Fortuna Nos. 1 and 2 but did nothing whatsoever then or later in that year on the other fourteen Fortuna claims, and, though Congress on December 31, 1920, extended for six months or until and including July 1, 1921, the time in which the annual work for 1920 could be done, it performed no part thereof on these fourteen claims within that time or later.

Knowing this work had not been done, appellee went to the claims early on the morning of July 1, 1921, and, no one being there at the time or arriving by noon of that day to begin or perform it, located that afternoon, beginning about 2 or 3 o'clock, the Eileen No. 1, Eileen No. 2, Cloudburst No. 1, Cloudburst No. 2 and Cloudburst No. 3 on the ground covered by the Fortuna Claims 3 to 16. He made these locations, thinking appellant had only until noon of July 1, 1921, to do, or at least to begin, the annual assessment work and that its failure to do this within that time resulted in a forfeiture of the claims and restored the ground to the public domain. But, inasmuch as the Act of Congress of December 31, 1920 (U. S. Comp. Stats. Ann. Supp. 1923, § 4620h), extended the time for doing the annual work for 1920

up to and including July 1, 1921, he was mistaken in this view, and his locations on that day were without effect in so far as their validity rested upon appellant's forfeiture of the ground in question. However, it was his contention at the trial that, regardless of the question of forfeiture, appellant had abandoned the claims previous to July 1, 1921, and he introduced testimony to establish this fact. The case went to trial, therefore, upon the issue of abandonment, and the jury returned a verdict in favor of appellee upon which the court rendered judgment quieting his title to the five claims in question.

The first and principal assignment is that the court erred in refusing appellant's motion for a directed verdict made at the close of the evidence in the case. This motion was based upon the contention that the evidence was insufficient to show that appellant had abandoned Fortuna claims Nos. 3 to 16, and therefore that the ground comprised in appellee's locations was at the time unappropriated public domain, open to location. Appellant's position is that the evidence not only fails to show that it abandoned the ground covered by the Fortuna claims, but that appellee's testimony establishes conclusively that he located it as forfeited ground, when in fact it was not open to forfeiture.

It appears from the deposition of appellee, taken some time previous to the trial, that when he located the Eileen and Cloudburst claims he was under the impression that the time for performing the annual assessment work on the Fortuna claims expired July 1, 1921, at noon, and that appellant, by failing to do, or at least to begin, the annual work for 1920, by that time had forfeited the ground covered by these claims. He testified at the trial that he knew they had been abandoned, but thought, notwithstanding

this fact, he could not locate the ground until appellant's time for doing the work had expired. It is not apparent, however, just how the fact that appellee had this impression when locating his claims could affect their validity. The important fact to be established was that the ground had reverted to the United States and become again a part of the public domain open to location, and it is immaterial whether this was brought about through forfeiture or abandonment. In either event it was subject to location, and it was unnecessary for the locator to state how it again became public domain and upon what theory he located it. Paragraph 3241, Revised Statutes of 1901, providing among other things that, in the relocation of an abandoned mining claim, the location notice shall state, "if the whole or any part of the new location is located as abandoned property, else it shall be void," was amended by chapter 22, Session Laws of 1907, so as to eliminate this requirement.

Appellant contends, however, that, even though it be true that under the circumstances abandonment was sufficient, the evidence fails to establish it, the fact that appellant did not do the annual work and was absent from the ground, unaccompanied by other circumstances pointing in that direction, being insufficient for this purpose. Lindley on Mines, 3d ed., § 644, p. 1603. Appellee upon the other hand argues that, if proof of other circumstances is necessary, the evidence in the case fully meets this requirement. For instance, he directs attention to the fact that appellant did the work for 1920 on claims Nos. 1 and 2 in December of that year, but failed to do it on claims 3 to 16, and, though Congress on December 31, 1920, extended the time in which the work could be done six months and a day, it was not performed even within this additional time. He points out also that

it held the claims in 1918 and 1919 by filing holding notices as provided by act of Congress, but the next year, 1920, when they could no longer be held by merely filing such notices, Congress having declined to grant such relief further, it failed to do the work necessary to hold them. He mentions the further fact that appellant did not perform the work for 1921, and refers to the testimony of appellee that Howard K. Welch, the president of the company, in reply to a question by him regarding the assessment work for 1920, said in October of that year, when employing appellee to do the work on Nos. 1 and 2:

"They were going to work only on two claims, that we would keep those two and be ready for a stock proposition later on, but the balance of the sixteen claims, we don't want the fourteen claims; there is nothing in them. We will just keep those two for a stock proposition later on."

Appellee testified further that Mr. Welch told him several times in April, 1918, and on a number of occasions thereafter, that the company did not want claims 3 to 16. Appellant points out, however, that in his deposition appellee had given testimony different in certain particulars from this, but, even if this be true, the jury had the benefit of both the deposition and the testimony on the witness-stand, and it was peculiarly its province to decide which was correct.

It is urged by appellant that the intention to abandon the ground in question could not be proved by the unauthorized declarations or statements of Mr. Welch, the president and manager of the company, to the effect that he did not want the property or that "we are going to keep only two claims" and like utterances. It is claimed that there must have been some act of the corporation itself through its board of directors or stockholders upon which to predicate

an intention to relinquish valuable rights. There could, under this view, be no such thing as abandonment of a mining claim by a corporation, unless its stockholders or directors by resolution so declare, even though such an intention existed and was known to the stockholders and officers as a result of discussions among themselves or otherwise. But whether it be or be not true that the intention of the company should have found expression in a resolution of the stockholders, or at least directors, of the company, before statements of its president relative thereto could be admitted in evidence or bind the company, appellee was permitted either properly or improperly to testify that Welch made the statements in question, and no error has been assigned upon their admission. This being true, they were rightfully considered by the jury, and because of the relations of Welch to the corporation, they, in connection with the other evidence on the question, justified that body in concluding that the company had decided to perform no longer the work necessary to retain the fourteen claims.

It was not a question of showing that the company had disposed or decided to dispose of real estate to which it had a patent, and which was necessary to the carrying on of its business, but merely of disclosing an intention on its part to discontinue to do the annual assessment work on certain of its claims, to wit, the fourteen in controversy. Hence the contention of appellant that the president of a corporation, or even its board of directors, cannot dispose of its real estate, especially that necessary for the transaction of its business, unless authorized by its stockholders to do so, has no application. While the statements of the president of the company who was in full charge of its affairs may not be conclusive, they are under the circumstances disclosed in this

case entitled to consideration upon the question of abandonment, which is purely a matter of intention, and "the fact," according to Lindley on Mines, third edition, section 644, page 1601, "is to be determined by the acts and conduct of the party. It may be express or implied; it may be affected by a plain declaration of intention to abandon; and it may be inferred from acts or failures to act, so inconsistent with an intention to retain it, that the unprejudiced mind is convinced of the renunciation."

In reply to a question upon cross-examination, Mr. Welch stated that he had not attempted to manipulate the stock of appellant company, whereupon counsel for appellee offered in evidence the following letter, which was received over appellant's objection:

"New York, May 24, 1922.

"Mr. P. J. Miller, Phoenix, Arizona—Dear Pat: Mr. Frank V. Sullivan asked me to write you to find out what you did with the other shares of Fortuna Consolidated Mining stock which you originally held. In other words, he would like to know where the shares are now so he can trace the whole business through, as he does not want them thrown on his market when he starts in manipulating the stock. Will you please answer Sullivan direct. His address is Frank V. Sullivan, No. 25 Broad Street, New York. With best wishes,

"Yours very truly,
"H. K. WELCH."

The admission of this letter is the basis of one of the assignments. It was appellee's contention that, so far as the officers of the company were concerned, there was no *bona fide* intention to develop a mine but merely to promote a company for the purpose of selling stock, and in their view, if the company retained claims Nos. 1 and 2 and abandoned the other fourteen, it would still have sufficient for this purpose. The record contains a good deal of testimony tend-

ing in this direction, and, without reciting it, we will simply say that, as the record then stood, there was no error in admitting the letter. Its immediate purpose was to contradict the statement that Welch had not manipulated the stock and in connection with the other testimony on this subject the jury could have decided that it did. Such a conclusion, it is conceivable, could have had some bearing on the question of abandonment, upon the theory that it was not necessary for stock purposes to retain more than claims 1 and 2. The range of inquiry upon the question of abandonment is very wide, "for it is generally only from facts and circumstances that the truth is to be discovered, and both parties should be allowed to prove any fact or circumstance from which any aid for the solution of the question can be derived." Lindley on Mines, 3d ed., p. 1601.

Finding no reversible error, the judgment of the lower court is affirmed.

ROSS and LOCKWOOD, JJ., concur.